# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 21-0520V

|  |  |
|---|---|
| JUAN ORTIZ, | Chief Special Master Corcoran |
| Petitioner, | Filed: January 21, 2025 |
| v. | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| Respondent. | |

*Bridget Candace McCullough*, Muller Brazil, LLP, Dresher, PA, for Petitioner.

*Lauren Kells*, U.S. Department of Justice, Washington, DC, for Respondent.

### DECISION ON ATTORNEY'S FEES AND COSTS[1]

On January 11, 2021, Juan Ortiz filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged that he suffered a right shoulder injury related to vaccine administration ("SIRVA") as a result of receiving an influenza ("flu") vaccine on September 19, 2018. Petition at 1.

The case was dismissed, and Petitioner has now moved for a final award of fees. However, for the reasons set forth below, I find that Petitioner has failed to establish reasonable basis in this claim. Thus, he is not entitled to an award of attorney's fees and costs, and the fees motion is denied.

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

**I.     Relevant Procedural History**

Along with the Petition, which sets forth only the basic elements of his claim, Mr. Ortiz filed a signed declaration[3] from Petitioner's counsel, acknowledging the fact that the Petition had been filed without medical records, "[d]ue to the potential Table amendment proposed by [R]espondent[4] which would divest victims of shoulder injuries related to vaccine administration (SIRVA) the benefit of a 'Table' claim." Exhibit 2 at ¶ 1.

During the subsequent year, Petitioner filed an amended petition containing more detailed information and medical records citations, and the affidavit and medical records required under the Vaccine Act. Exhibits 3-9, ECF Nos. 14-15, 17, 19. After the case was activated and assigned to the "Special Processing Unit" (OSM's adjudicatory system for resolution of cases deemed likely to settle), Petitioner filed a supplemental affidavit and additional medical records. Exhibits 10-12, ECF Nos. 27, 31.

After determining that Petitioner had failed to provide sufficient evidence to support his claim - specifically related to the six-month severity requirement – I ordered him to show cause why his claim should not be dismissed. ECF No. 38; *see* Section 11(c)(1)(D)(i) (severity requirement). In response, Petitioner moved for the dismissal of his claim, acknowledging that "to proceed further would be unreasonable and would waste the resources of the Court, the Respondent and Vaccine Program." ECF No. 39. The Petition was dismissed, with judgment entering on May 31, 2024. ECF Nos. 39-40.

On September 13, 2024, Petitioner filed a request for an award of $11,890.48 in attorney's fees and costs. Petitioner's Application for Attorneys' Fees and Costs at ¶ 4, ECF No. 44. The billing records show that he first contacted Petitioner's counsel on October 15, 2018, only ten days post-vaccination. *Id.* at 6. Petitioner did not address the statutory requirements of good faith and reasonable basis - prerequisites for any attorney's fees and costs award in unsuccessful cases. *See* Section 15(e)(1).

---

[3] The declaration was signed under penalty of perjury as required by 28 U.S.C.A. § 1746. Exhibit 2.

[4] On July 20, 2020, the Secretary of Health and Human Services proposed the removal of SIRVA from the Vaccine Injury Table. National Vaccine Injury Compensation Program: Revisions to the Vaccine Injury Table, Proposed Rule, 85 Fed. Reg. 43794 (July 20, 2020). The proposed rule was finalized six months later. National Vaccine Injury Compensation Program: Revisions to the Vaccine Injury Table, Final Rule, 86 Fed. Reg. 6249 (Jan. 21, 2021). Approximately one month later, the effective date for the final rule was delayed. National Vaccine Injury Compensation Program: Revisions to the Vaccine Injury Table, Delay of Effective Date, 86 Fed. Reg. 10835 (Feb. 23, 2021) (delaying the effective date of the final rule until April 23, 2021). On April 22, 2021, the final rule removing SIRVA from the Vaccine Table was rescinded. National Vaccine Injury Compensation Program: Revisions to the Vaccine Injury Table, Withdrawal of Final Rule, 86 Fed. Reg. 21209 (Apr. 22, 2021).

Respondent reacted to Petitioner's filing on September 27, 2024, "defer[ing] to the court regarding whether the statutory requirements for an award of attorneys' fees and costs are met in this case." Respondent's Response to Motion at 2, ECF No. 45. Petitioner did not file a reply.

## II. Applicable Legal Standards

Motivated by a desire to ensure that petitioners have adequate assistance from counsel when pursuing their claims, Congress determined that attorney's fees and costs may be awarded even in unsuccessful claims. H.R. REP. NO. 99-908, at 22 *reprinted in* 1986 U.S.C.C.A.N. 6344, 6363; *see also Sebelius v. Cloer*, 133 S.Ct. 1886, 1895 (2013) (discussing this goal when determining that attorneys' fees and costs may be awarded even when the petition was untimely filed). This is consistent with the fact that "the Vaccine Program employs a liberal fee-shifting scheme." *Davis v. Sec'y of Health & Hum. Servs.*, 105 Fed. Cl. 627, 634 (2012). Indeed, it may be the only federal fee-shifting statute that permits *unsuccessful* litigants to recover fees and costs.

However, Congress did not intend that *every* losing petition be automatically entitled to attorney's fees. *Perreira v. Sec'y of Health & Hum. Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994). And there is also a prerequisite to even obtaining fees in an unsuccessful case. The special master or court may award attorney's fees and costs to an unsuccessful claimant only if "the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." Section 15(e)(1). Reasonable basis is a prerequisite to a fee award for unsuccessful cases – but establishing it does not automatically *require* an award, as special masters are still empowered by the Act to deny or limit fees. *James-Cornelius on behalf of E. J. v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374, 1379 (Fed. Cir. 2021) ("even when these two requirements are satisfied, a special master retains discretion to grant or deny attorneys' fees").

As the Federal Circuit has explained, whether a discretionary fees award is appropriate involves two distinct inquiries, but only reasonable basis is at issue herein.[5] Reasonable basis is deemed "an objective test, satisfied through objective evidence." *Cottingham v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1344 (Fed. Cir. 2020) ("Cottingham I"). "The reasonable basis requirement examines "not at the likelihood of success [of a claim] but more to the feasibility of the claim." *Turner*, 2007 WL 4410030,

---

[5] Claimants must also establish that the petition was brought in good faith. *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017) (quoting *Chuisano v. Sec'y of Health & Hum. Servs.*, 116 Fed. Cl. 276, 289 (2014)). "[T]he 'good faith' requirement . . . focuses upon whether petitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-0544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). But good faith is not disputed herein, and I do not ascertain evidence in the record calling it into question.

at *6 (quoting *Di Roma v. Sec'y of Health & Hum. Servs.,* No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993)). The Federal Circuit recently explained "that a reasonable basis analysis is limited to objective evidence, and that subjective considerations, such as counsel's subjective views on the adequacy of a complaint, do not factor into a reasonable basis determination." *James-Cornelius*, 984 F.3d at 1379.

Although clearly easier to meet than the preponderant standard required for compensation, "courts have struggled with the nature and quantum of evidence necessary to establish a reasonable basis." *Wirtshafter v. Sec'y of Health & Hum. Servs.,* 155 Fed. Cl. 665, 671 (Fed. Cl. 2021). "[I]t is generally accepted that 'a petitioner must furnish some evidence in support of the claim.'" *Id.* Citing the *prima facie* elements of a successful claim described in Section 11(c)(1), the Federal Circuit recently instructed that the level of the objective evidence sufficient for a special master to find reasonable basis should be "more than a mere scintilla but less than a preponderance of proof." *Cottingham I*, 971 F.3d at 1345-46. "This formulation does not appear to define reasonable basis so much as set its outer bounds." *Cottingham v. Sec'y of Health & Hum. Servs.,* 159 Fed. Cl. 328, 333, (Fed. Cl. 2022) (*"Cottingham II"*), *aff'd without op.*, 2023 WL 754047 (Fed. Cir. Nov. 14, 2023). "[T]he Federal Circuit's statement that a special master 'could' find reasonable basis based upon more than a mere scintilla does not mandate such a finding." *Cottingham II*, 159 Fed. Cl. at 333 (citing *Cottingham I*, 971 F.3d at 1346).

Furthermore, the issue of reasonable basis is not a static inquiry. The reasonable basis which existed when a claim was filed may cease to exist as further evidence is presented. *Perreira*, 33 F.3d at 1377. In *Perreira,* the Federal Circuit affirmed a special master's determination that reasonable basis was lost after Petitioner's "expert opinion, which formed the basis of the claim, was found to be unsupported by either medical literature or studies." *Id.* at 1376.

At issue here, Vaccine Act Section 11(c)(1)(D)(i) requires the establishment of an injury and residual effects lasting for over six months after the date of vaccination. This is a threshold requirement for entitlement. *Black v. Sec'y of Health & Hum. Servs.*, 33 Fed. Cl. 546, 550 (1995) (reasoning that the "potential petitioner" must not only make a *prima facie* case, but clear a jurisdictional threshold, by "submitting supporting documentation which reasonably demonstrates that a special master has jurisdiction to hear the merits of the case"), *aff'd*, 93 F.3d 781 (Fed. Cir. 1996) (internal citations omitted).

### III. Evidence Provided by Medical Records and Affidavits

Petitioner received the vaccination at issue on September 19, 2018. Exhibit 1 at 1. On October 5, 2018 (16-days post-vaccination), Petitioner saw an orthopedist and complained of right shoulder pain following a vaccination that was "placed too high."

4

Exhibit 6 at 21. An examination revealed right shoulder tenderness, limited range of motion, and weakness. *Id*. The next day, Petitioner underwent an MRI which revealed a "partial articular surface tear of the distal infraspinatus tendon muscle strain or contusion with more posterior/proximal infraspinatus musculature, [g]lenohumeral osteoarthritic changes, and acromioclavicular arthrosis," "mild fluid in the subacromial/subdeltoid bursa," but "no definitive evidence of a labral tear." Exhibit 7 at 8.

Two months later, Petitioner began physical therapy ("PT") for his shoulder. Exhibit 8 at 14. He continued to report improvement during eight PT sessions in December 2018 and January 2019. *Id.* at 2-13. By his seventh PT session on January 23, 2019, he no longer reported pain while sleeping, but only pain when pushing and opening doors. *Id.* at 11. By his eighth and final PT session on January 25, 2019, Petitioner reported only that he was "feeling good." *Id*. The section reserved for "problems" reported at this session was blank. *Id*.

There are no medical records showing treatment during the subsequent three-month period. Between April 27, 2019, and June 18, 2020, Mr. Ortiz saw his primary care physician, on seven occasions. Exhibit 6 at 2-40. He received treatment for Lyme disease and underwent an echocardiogram and carotid doppler. *Id.* There are no medical record entries related to shoulder pain during this time.

On January 4, 2022 - more than three years post-vaccination - Petitioner presented to his orthopedist for follow-up of right shoulder pain and new complaint of right knee pain. Exhibit 9 at 7. The record notes "[t]his is a 45 y[ear] o[ld] male who presents today for evaluation of right shoulder pain. He states he has been having more pain with overhead activities and ROM." *Id*. On exam, Petitioner demonstrated tenderness on palpation at the bicipital groove with a positive Speed's test and reduced range of motion. Pain was elicited during Neer and Hawkins-Kennedy impingement tests, and weakness was seen during an O'Brien's test. *Id.* at 8. Petitioner was diagnosed with rotator cuff tendonitis-right impingement syndrome, and an MRI was ordered. *Id.* at 8-9.

In late January 2022, Petitioner underwent MRIs of her right shoulder and knee. Exhibit 12 at 6-9. The shoulder MRI revealed some new findings such as evidence of a degenerative tear of the glenoid labrum, and no bursal fluid or other evidence of bursitis. *Id.* at 6-7. After discussing the results from both MRIs with the orthopedist via telephone, Petitioner agreed to undergo arthroscopic knee surgery. *Id.* at 10 -12 (telephone call a pre-op visit).

Following knee surgery, Petitioner returned to the orthopedist on February 28, 2022, for further treatment of his right shoulder pain. Exhibit 12 at 16-18. At this visit, the

orthopedist changed Petitioner's shoulder assessment to "primary osteoarthritis of the right shoulder." *Id.* at 17. No additional records have been filed.

Petitioner's initial affidavit, executed in February 2022, addressed only the basic requirements of his vaccine claim. Exhibit 3. He provided more detail in his supplement declaration, signed under penalty of perjury, but not dated. Exhibit 10. Regarding his lack of treatment after his last PT session in January 2019, he insisted that he stopped treatment, due to his father's death on January 29th. Exhibit 10 at ¶¶ 4-5. He stated that thereafter, he had to take additional family responsibilities, which became his priority. *Id.* at ¶ 5. Petitioner maintained that he "continue[d] to have discomfort in my right shoulder, and it has never been the same since receiving the influenza vaccine on September 19, 2018." *Id.* at ¶ 6.

### IV.   Analysis – Reasonable Basis

There is no objective evidence demonstrating that Petitioner's symptom continued beyond late January 2019, approximately four months post-vaccination. Although he provided a reasonable explanation for stopping PT (his father's passing), this event would not account for his failure to return for treatment, if still experiencing symptoms, until almost three years later. And the medical records showed Petitioner sought treatment for other conditions on seven occasions from mid-April to mid-June 2019. Most importantly, Petitioner reported feeling well, with no ongoing problems at his last PT session, four months and ten days post-vaccination.

Given the significant gap in treatment, it is highly unlikely that the shoulder pain Petitioner complained of in January 2022, could be connected to the symptoms he experienced in 2018-19. Additionally, the 2022 MRI revealed findings not seen in the earlier testing, and the orthopedist determined these later symptoms were due to osteoarthritis, rather than the previously diagnosed tendonitis. No objective evidence exists linking these later symptoms to the SIRVA alleged to have occurred in 2018.

The fact that counsel may have filed this claim, without all relevant medical records, in anticipation of the planned removal of SIRVA from the Vaccine Table, does not bear on the claim's objective basis, or lack thereof. In *Simmons*, the Federal Circuit clearly held that the pending expiration of the Vaccine Act's statute of limitations would not convey a reasonable basis which would otherwise not exist, and that efforts by an attorney to serve a client's interests in filing a claim quickly, without first some preliminary investigation of the record fact support for the claim, was only relevant to the good faith prong of the test for fees in unsuccessful cases. *Simmons,* 875 F.3d at 636.

6

Given the above, the claim was objectively untenable from the outset. This is not a case in which the development of a fact, out of ambiguous records, *later* revealed that a claim that initially appeared viable in fact was not. Under such circumstances, counsel reasonably bears the risk in filing a claim that lacks reasonable basis, and therefore may be appropriately denied a fees award (even if the matter was otherwise pursued in good faith).

## Conclusion

The Vaccine Act permits an award of reasonable attorneys' fees and costs to an unsuccessful litigant only where the litigant establishes the Petition was brought in good faith and there was a reasonable basis for the claim for which the Petition was brought. Section 15(e)(1). But Petitioner has failed to provide evidence establishing there was a reasonable basis for filing his claim. **Petitioner's motion for attorney's fees and costs is therefore <u>DENIED</u>.**

The Clerk of the Court is directed to enter judgment in accordance with this Decision.[6]

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u><br>
Brian H. Corcoran<br>
Chief Special Master

---

[6] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.